# EXHIBIT A

```
 1                    UNITED STATES OF AMERICA
                    UNITED STATES DISTRICT COURT
 2                  CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION
 3
                             - - -
 4                  HONORABLE CHRISTINA A. SNYDER
               UNITED STATES DISTRICT JUDGE PRESIDING
 5                           - - -

 6
      SECURITIES AND EXCHANGE           )
 7    COMMISSION,                       )
                                        )
 8             PLAINTIFF,               )
                                        )  CASE NO.:
 9    VS.                               )  CV 21-2927-CAS
                                        )
10    ZACHARY J. HORWITZ, ET AL.,       )
                                        )
11             DEFENDANT.               )
      _____)
12

13

14
                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                    MONDAY, OCTOBER 30, 2023
16
                     LOS ANGELES, CALIFORNIA
17

18

19

20

21

22

23              LAURA MILLER ELIAS, CSR 10019
              FEDERAL OFFICIAL COURT REPORTER
24             350 WEST 1ST STREET, ROOM 4455
              LOS ANGELES, CALIFORNIA 90012
25                 PH:  (213) 894-0374
```

**EXHIBIT A**
**Page 5**

```
 1
      APPEARANCES OF COUNSEL:
 2

 3    ON BEHALF OF RECEIVER:

 4

 5              RAINES FELDMAN LITTRELL LLP

 6              BY:  KATHY PHELPS, ESQ.

 7              1900 AVENUE OF THE STARS

 8              SUITE 1900

 9              LOS ANGELES, CA 90067

10

11

12    ON BEHALF OF MOVANT CITY NATIONAL BANK:

13

14              LATHAM AND WATKINS LLP

15              BY:  MANUEL A. ABASCAL, ESQ.

16                   JOSH HAMILTON, ESQ.

17              355 SOUTH GRAND AVENUE

18              SUITE 100

19              LOS ANGELES, CA 90071-1560

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

**EXHIBIT A**
**Page 6**

1

2                                    INDEX

3

4

5       PROCEEDING                                          PAGE

6

7       RECEIVER'S MOTION FOR                                4

8       REVIEW OF MAGISTRATE JUDGE'S

9       ORDER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 30, 2023; 10:03 A.M.

2                        - - -

3            THE CLERK:  Calling Calendar Item No. 1.

4            Case No. CV 21-2927.

5            Securities and Exchange Commission versus Zachary

6    Horwitz, et al.

7            Counsel, please state your appearances.

8            MS. PHELPS:  Good morning, Your Honor.  Kathy

9    Phelps on behalf of the receiver and the receiver is also

10   here present today.

11           MR. ABASCAL:  Good morning, Your Honor.  Manny

12   Abascal on behalf of City National Bank and I also have Josh

13   Hamilton in my office.

14           THE COURT:  Good morning.

15           All right.  I know that I have upset the apple cart

16   here so I suppose, Mr. Abascal, you have the laboring oar for

17   the day, uh, and I assume you wish to be heard.

18           MR. ABASCAL:  Yes, Your Honor.

19           Thank you very much for that.

20           I would like to address four issues with the

21   Court's tentative, and thank you very much, Your Honor, for

22   sending the tentative in advance.  My main concern with the

23   tentative is the Court and the receiver are adopting a

24   definition of claim that is not in the agreement and that the

25   receiver itself has not used in this case.  The receiver in

1    this case has defined claim to include unasserted claims, and

2    I'll go through that in a minute.

3          My second concern is that the Court is not

4    interpreting the actual language in the 2020 agreement.  The

5    2020 agreement, uh, states that any dispute is a problem or

6    concern and one that involves the combined claims of all the

7    parties.  That's the actual language.  It doesn't require a

8    claim.

9          It says a dispute, problem or concern that involves

10   the combined claims of all the parties.  And here in this

11   case as the Court noted, this is a case where the combined

12   claims of all the parties are in the hundreds of millions of

13   dollars.

14         The third concern I have, and I'll go through each

15   of these in a little bit more detail, Your Honor, with the

16   Court's patience is the Court is adopting an argument that

17   wasn't clearly made to the magistrate judge and it can't be

18   clearly erroneous for the magistrate to not have adopted a

19   ruling that was never asked for.

20         Before the magistrate, uh, the receiver had argued

21   that none of the agreements applied and also argued that the

22   2012 and 2007 agreements applied.  In their brief before the

23   magistrate, they said no notice had ever been provided of any

24   of the updates so the only ones that were applicable were the

25   2012 and the 2007 agreement.

```
1              And then finally, Your Honor, my last concern, uh,

2     which the first I'll start with in detail is that the I

3     believe standard of review is not properly being applied in

4     the tentative both as to how to review a magistrate judge's

5     order and under the FAA.  So those are my main points and

6     then I'll start with the standard of review.

7              Um, under the Salinas case and other established

8     case law, a magistrate judge's ruling is reviewed for clear

9     error which in Salinas was defined as, um, there a ruling can

10    be clearly erroneous if there is -- cannot be clearly

11    erroneous if there's no 9th Circuit authority on point.  If

12    the magistrate judge's account of the evidence is plausible

13    in light of the record, then the district court may not

14    reverse it even if it would have weighed the evidence

15    differently.  I think that's what the --

16             THE COURT:  Let me stop you there.  If the

17    magistrate judge is essentially confused or mislead by the

18    arguments of the parties which I think was part of the

19    problem here, does that rule apply?

20             MR. ABASCAL:  Um, I think if the magistrate judge's

21    ruling, uh, was plausible, then that rule does apply.  I

22    don't see how the magistrate judge was mislead by the -- by

23    the parties, Your Honor, and I would like to hear more about

24    that.

25             THE COURT:  Well, no, here's my problem.  I'm not
```

1    suggesting that your side did it.  Your side made all the

2    arguments.  I do think the receiver, uh, did not emphasize

3    sufficiently the fact that I had issued the order permitting

4    investigation.  And I think the crux in the problem here is

5    does -- is that order trumped by the agreement.

6            And as you can read, I think that there's not a

7    claim yet and because there's not a claim, then I don't think

8    the agreement comes into play at this point in time.  It may

9    at some future time when there's a claim, but at this point

10   in time when the receiver is attempting to conduct an

11   investigation pursuant to powers given to it by the Court

12   expressly, I don't think that's barred.

13           It's really that simple.  There are lots of fancy

14   arguments that have been made, but at the end of the day,

15   that's really the core of my ruling which is we don't have a

16   claim yet.  And, um, I know you believe there's a claim under

17   the agreement and that the agreement now, uh, is effective,

18   but even then I don't necessarily agree because we're talking

19   about the 2020 agreement not a later agreement and I think it

20   has, um, it doesn't constrain the receiver as you argue.

21           MR. ABASCAL:  Well, Your Honor, let me address that

22   concern and let me go straight to the heart of it.  There are

23   11 cases in five circuits that have all said that a receiver

24   is bound by the agreements and stands in the shoes of the

25   entity, the receivership entity.  So the Court's order cannot

```
1    change the agreements.  There's no situation where the
2    Court's order can trump or reverse an agreement.
3           The receiver is bound by the agreements and the
4    Court's order can define the receiver's powers, but it can't
5    exceed those beyond what is in the agreement.  That's very
6    clear from the O'Melveny case, um, from all the 11 cases that
7    we cite in our brief.  So there isn't an issue where the
8    Court -- the agreement is trumping.  The Court is bound by
9    those agreements.
10          THE COURT:  That's where we differ.  I don't think
11   that the events have occurred to cause the agreements to come
12   into play yet.  Um, if you don't have a claim, uh, and that's
13   really where we disagree whether there's a claim or not, I
14   don't think the agreement comes into play.  So I am not
15   saying that the agreements can't in some circumstances trump
16   the receiver's powers, but what I am saying is that the Court
17   has an obligation to construe and interpret the agreement.
18          And as I interpret the agreement, essentially, we
19   are not up to the claim point yet and we don't get to the
20   arguments that you're making, although down the road if there
21   is a claim against the bank, you may well be able to make the
22   claims.
23          MR. ABASCAL:  Well, let me then address that.  The
24   agreement actually says and here is the language, if you have
25   a problem or concern about your account, please contact us
```

1    immediately.  If you and we are not able to resolve the

2    dispute quickly and informally, then you agree the dispute

3    will resolve using the procedures set below.  So dispute is

4    defined as a problem or concern.  The agreement does not

5    define it as a filed lawsuit.  It does not define it as an

6    asserted claim.  It defines any problem or concern which we

7    clearly have here.  We have a subpoena that we believe is not

8    issued with any authority.  So that's the definition of

9    dispute.

10          Now, let me get to the definition of claim.  The

11   agreement doesn't say there has to be a filed claim.  It says

12   a dispute which is a problem or concern that involves the

13   combined claims of all parties totalling $250,000 must go to

14   judicial reference.  It says involves the combined claims of

15   all the parties.  It doesn't require a filed claim.  And

16   clearly here I think with the Horwitz matter, we have the

17   combined claims of all the parties are in the hundreds of

18   millions.

19          Now, let me go to the heart of it.  The claim, the

20   word claim which the Court is focused on, the receiver in

21   this case has defined claim to be an unasserted claim.  If

22   you look at ECF 218 that is a settlement agreement.  It's a

23   settlement agreement with a party called Crookston.  And in

24   that settlement agreement on page 2, the receiver says that

25   they have claims against Crookston and they're settling those

1    claims.

2         There was no filed lawsuit against Crookston.  But

3    in this settlement agreement, the receiver says quote, "a

4    defined term, the receiver's claims."  And those claims are

5    settled for almost $4 million and those claims are released.

6    So the receiver itself has defined claim to include an

7    unasserted claim in this very litigation not once, but twice.

8         In ECF 235 there is a settlement agreement with

9    JJMT that was for $9 million.  Settlement agreement signed by

10   this receiver, drafted by this receiver, and on page 2 of

11   that settlement agreement, this receiver says that they have

12   claims against JJMT.  There was no filed lawsuit by the

13   receiver against JJMT.  There was no asserted claim by JJMT,

14   but the receiver herself defined the word claims as including

15   the unasserted claims against JJMT.  And those claims were

16   settled and then released for $9 million.

17        So it cannot be clearly erroneous for the Court to

18   adopt the same definition as claims as the receiver is using

19   in this case in their settlement agreements.  So I note that

20   to begin with, again, the agreements do not use the word

21   claim.  There's no interpretation of any problem or concern

22   that requires a filed claim.  And the actual language is

23   involving the combined claims of all the parties.

24        So on that alone, I think there is no requirement

25   in the agreement that the dispute resolution and ADR

1   provisions require a filed claim.  If the receiver wants to

2   pursue the subpoena, they can try to pursue it in judicial

3   reference in California court.  They can't under no

4   circumstance would any account holder be allowed to get

5   pre-filing federal court discovery under these agreements.

6          THE COURT:  Yeah, I understand that, but what about

7   the receiver's investigatory powers?  You're saying the rest

8   of the order that I issued way back when has no effect

9   because even though I gave the receiver investigatory powers,

10  it has none?

11         MR. ABASCAL:  No, not at all.  Your order for this

12  receiver expressly said that the receiver can pursue, um, an

13  investigation, litigation and arbitration and settlement.  So

14  your order said that they can pursue all the remedies that

15  they're entitled to, but they're bound by the agreement.  And

16  that's the holding of 11 cases again in five circuits.

17         In the McIntyre case in the Southern District of

18  New York a case against Lobe & Lobe, SEC receiver sought to

19  get a subpoena against Lobe & Lobe, uh, and the court quashed

20  the subpoena and the court said because under the agreements,

21  they weren't entitled to that discovery.  And that was

22  essentially the same, uh, holding and rationale in the other

23  cases that we've cited in multiple different circuits.

24         So it's not undermining your order, Your Honor.

25  Your order allows the receiver to do what they're

EXHIBIT A
Page 15

1    contractually entitled to do, but the Court does not have the

2    power as been reflected in -- in multiple cases, um, to

3    overturn or allow the receiver to reject agreements.  This is

4    not a bankruptcy receiver.

5         THE COURT:  No, I understand that line of case law,

6    but I just don't think it's applicable here.  I interrupted

7    you.  Why don't you finish off, and then we'll hear from the

8    receiver.

9         MR. ABASCAL:  Yeah.  Let me go to, again, the

10   standard of review which I think is also, um, not being

11   applied accurately in the tentative ruling.  The Coast Plaza

12   case is important.  That case says that there's a strong

13   public policy in favor of arbitration.  Uh, the general rule

14   that arbitration should be upheld unless it can be said with

15   assurance that an arbitration clause is not susceptible to an

16   interpretation covering the asserted dispute.

17        The burden is on the party to show, um, that's

18   opposing arbitration, that the agreement doesn't require it.

19   As the court said, if there's any reasonable doubt, that

20   doubt must be favored and resolved in favor of arbitration

21   and that implies to judicial reference as well.  Any

22   reasonable doubt.  And I think under that standard,

23   Your Honor, there is clearly reasonable doubt as to the

24   receiver's interpretation.

25        They're trying to import this notion of a filed

1    claim into this agreement when that language is not there.

2    It again says any problem or concern involving the combined

3    claims of all the parties.

4          I'll also note that the receiver cited a definition

5    from the Bankruptcy Code as applicable here, but even under

6    that definition, that definition covers unasserted claims.

7    Uh, the -- the Bankruptcy Code provision that they cite

8    includes a right to payment.  Whether or not reduced to

9    judgment contingent, disputed and that's what we have here is

10   a receiver has a potential right to payment, um, and a

11   problem or dispute involving a potential right to payment.

12         So the receiver's interpretation that a claim must

13   mean an asserted claim is not compelled by any 9th Circuit

14   precedent and is not accurate beyond a reasonable doubt.  And

15   therefore, Your Honor, I think applying the standard of

16   review both for the FAA and for a magistrate judge ruling,

17   the ruling should be upheld.

18         I'll note one other issue, Your Honor, um, two

19   other issues just real briefly and thank you for your

20   patience.  One, again, the receiver didn't clearly articulate

21   that the 2020 agreement should apply before the magistrate.

22   They cited the 2007 agreement and the 2012 agreement.  They

23   didn't clearly apply this one.

24         And then finally I'll say, Your Honor, that City

25   National Bank is not seeking any windfall here.  Uh, what

1    we're seeking here is the application of the agreement.  The

2    parties, the receiver stands in the shoes of Horwitz.  The

3    parties had an agreement.  It was the benefit of the bargain

4    and the ADR provision is that here clear benefit, a clear

5    provision and important term of that agreement and we're

6    seeking for that to be enforced.

7            Now, the receiver has remedies.  They can go and

8    file a judicial reference.  They can seek this subpoena in

9    judicial reference.  They can, uh -- they have the remedies.

10   What they don't have under the agreement which the parties,

11   um, agreed to at the inception of this relationship, they

12   don't have the right to pre-filing federal court discovery.

13           Um, so the receiver is not without any remedies,

14   um, and this is clear from the case law I cited including the

15   Winkler case, Your Honor.  And I know Winkler is the most

16   recent case which clearly says the ADR provisions apply to

17   the receiver.  So with that Your Honor, I thank you.

18           THE COURT:  Okay.  Who will be speaking for the

19   receiver?

20           MS. PHELPS:  I will be, Your Honor.

21           THE COURT:  Okay, Ms. Phelps.

22           MS. PHELPS:  Thank you, Your Honor.

23           This is a dispute that cuts directly to the duties

24   of the receiver and your authority and supervision over the

25   receiver.  And the question I think, Your Honor, your

1    tentative is exactly right.  The first question is what

2    contract applies, and the second question is does that

3    contract have applicable ADR provisions that have in fact

4    been triggered here.

5            And then, of course, even if there is such a

6    provision, should that apply to a federal equity receiver.

7    And I think that third question is one we don't even need to

8    get to today.

9            Um, I think that on the first question, Your Honor,

10   it is exactly right that the 2020 amendment applies and as I

11   hear counsel today, City National Bank's counsel, it appears

12   to me they have in fact conceded that the 2023 amendment

13   doesn't apply.  And for that reason, there is no applicable

14   arbitration provision.  At the hearing in front of the

15   magistrate, they were still very much well, it could be

16   either one, and today they seemed to have zeroed in on

17   judicial reference.

18           So I think that that in and of itself demonstrates,

19   Your Honor, that we really need to decide what contract

20   applies.  And I think that your tentative is correct and it

21   appears to me correct, uh, that counsel now understands that

22   and that we are talking about the 2020 amendment.  Um, I -- I

23   disagree vehemently that this was not raised.  It was all

24   that we talked about in the lower court what contract

25   applies.

**EXHIBIT A**
**Page 19**

```
 1                City National Bank threw all of the contracts in
 2      front of the court and then argued repeatedly that those
 3      contracts were subject to amendment and were amended along
 4      the way.  The most recent one is the 2020 amendment.  I don't
 5      think that there's any dispute there at all.  So then we move
 6      to the question of well, what does that 2020 agreement say.
 7      It does not define dispute nor does it define claim.
 8                What it does do is give it a very specific
 9      explanation of what is required to trigger it.  And there are
10      three things and it is specifically, a dispute regarding a
11      claim that involves $250,000 or more.  It's very clear.  It
12      is their own contract.  Now, there has been no argument made,
13      um, contrary to what I just heard counsel say that the
14      receiver has said that there has to have actually been a
15      claim filed.
16                No, a claim is right to payment and listening to
17      counsel, I could almost hear him get a little tangled up in
18      that argument because the receiver had right to payment
19      against the parties that she settled with.  She asserted
20      those rights to payment.  She entered into settlement
21      discussions and she settled them.  That hasn't happened here.
22      We don't know yet if the receiver is going to assert a right
23      to payment because we need to discovery first.
24                So under the very, very language of -- very
25      specific language of City National Bank's own contract, they
```

1    haven't met those terms.  And I will say that we use the

2    definition, um, from the Bankruptcy Code which is very

3    specifically a right to payment.  It doesn't say anywhere

4    that an actual lawsuit has to have been filed.  Here, we

5    don't even have a claim that's been asserted yet.

6           Um, but the Bankruptcy Code has been cited because

7    Your Honor, the Central District of California local rules do

8    ask the Court to administer a receivership case as closely to

9    a bankruptcy case as possible.  It is a very robust and

10   common definition to claim.  That definition is a right to

11   payment.  And here the receiver has not asserted a right to

12   payment.  She has simply served an investigatory subpoena.

13   That is all that we are talking about.

14          And as the Court has noted, you have granted her

15   that authority.  She has served 9 or 10 subpoenas in this

16   case without issue.  Parties, third parties, have produced

17   those documents and so that has just been a nonissue in this

18   case.  We do understand that City National Bank does not want

19   to produce records, um, but we do believe that they are duty

20   bound to do so pursuant to the terms of the subpoena.

21          On the question of the standard of review, um,

22   counsel has cited a case saying there's a policy in favor of

23   arbitration, but then right after that noted the exception

24   that there has to be an arbitration clause that applies.

25   There isn't here for all of the reasons that we discussed.

1    We've now zeroed in on what the contract is, we've zeroed in

2    on what the trigger language is.  Your Honor, I think in your

3    tentative said exactly it right that it hasn't happened yet

4    and so this is where we are.

5            At bottom, Your Honor, this case is, uh, it's your

6    case.  You're in charge of it.  You have appointed the

7    receiver.  Congress has called upon you to handle this case

8    in an equitable manner and City National Bank is asking you

9    to delegate important responsibilities and an important issue

10   to a nonjudicial officer.  You know, the judicial reference

11   process will divest the Court of its supervisory role over

12   this proceeding, and we don't think that's appropriate at

13   this junction for all the reasons that I stated.

14           Congress has given you the authority and the power

15   to make sure that this matter is handled in an equitable

16   fashion.  We have a case here where City National Bank wants

17   the receiver who is not a party to be bound by an agreement

18   that fraudsters made as part of their scheme and there's

19   nothing right or equitable about that.  But, again,

20   Your Honor, I don't even think we need to get there.

21           Obviously, I have a lot of argument on that topic,

22   but I think that the Court's tentative ruling that the 2020

23   agreement is the one applies and the language in that 2020

24   agreement regarding ADR has not yet been triggered.  And for

25   all of those reasons, Your Honor, we think that the Court's

1    tentative got it exactly right.

2            THE COURT:  Okay.  Mr. Abascal, do you have

3    anything to say in response?

4            MR. ABASCAL:  Yes, briefly, Your Honor.

5            I don't think the receiver has addressed the key

6    issues that I've identified.  First, Your Honor, the

7    definition of claim.  We're asking the Court to apply the

8    same definition of claim that the receiver has used in the

9    JJMT agreement and in the Crookston agreement.  In those

10   agreements the receiver did not file a lawsuit, only

11   conducted an investigation and settled the claim, uh, which

12   they define as receiver's claims.

13           So they're defining claim as an unasserted claim.

14   And it cannot be clearly erroneous to interpret our agreement

15   as using the definition of claim that the receiver itself has

16   used in this case.  I'll also note that the JJMT agreement

17   also defines the word dispute and it defines it broadly to

18   include the disputes that they had with JJMT which, again,

19   did not involve a filed claim.

20           Now, that case doesn't even involve our agreement.

21   Our agreement, again, the exact language which was never

22   quoted by the receiver in their reply is that a dispute is

23   any problem or concern that, and then it goes on to say for

24   judicial reference that involves the combined claims of all

25   the parties.  So this dispute that we have problem or concern

1    clearly involves a situation where the combined claims of all

2    the parties are hundreds of millions of dollars here.

3         I'll also note the receiver is essentially asking

4    this Court to not follow the Winkler case, not follow the

5    Sharpe case, not follow FDIC versus O'Melveny.  Congress has

6    not given the Court or an equity receiver the power to reject

7    agreements.  That is clearly articulated in five different

8    circuits in 11 different cases.  This court does not have the

9    power to abrogate existing agreements.

10        The receiver steps in the shoes of Horwitz and is

11   bound by those agreements.  And none of the agreements --

12   what the receiver essentially argues don't let me bound by

13   these agreements.  I shouldn't be bound by them.  That has

14   been rejected already multiple times including in this

15   circuit as recently as Winkler.

16        Again, Your Honor, I will say there is no

17   interpretation of the City National Bank agreements that

18   would allow federal court discovery.  The receiver has

19   remedies.  They can seek the subpoena elsewhere.  They can

20   file something, a lawsuit in judicial reference and this

21   Court would continue to supervise that under its order.  The

22   Court's order said that the receiver can proceed with

23   litigation, investigation or arbitration.

24        And so we're just asking the Court to adopt and

25   follow the agreement that are bound by the parties to follow

1    the Winkler case, Sharpe, FDIC versus O'Melveny that says

2    this receiver is bound by the agreements signed by Horwitz

3    and those agreements, as I noted in the language, have very

4    broad language that would include any problem or concern that

5    has to be put into judicial reference.  And this notion of

6    claims, we're asking the Court just to apply the same

7    definition that the receiver itself applied.

8            THE COURT:  Okay.  I hear you.  Um, I'm gonna take

9    the matter under submission and consider what Mr. Abascal

10   said.  I am currently disinclined to change my ruling, but

11   let me take a further look at his arguments and I will have

12   something for you sooner rather than later.

13           Thank you, everybody.

14           THE CLERK:  Thank you, counsel.

15           (Proceedings were concluded at 10:31 a.m.)

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    CERTIFICATE OF REPORTER
 3
 4   COUNTY OF LOS ANGELES      )
 5                             )  SS.
 6   STATE OF CALIFORNIA        )
 7
 8   I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED
 9   STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,
10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE
11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET
12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN
13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO
14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION
15   OF MY STENOGRAPHIC NOTES.
16
17
18   DATE:  NOVEMBER 6, 2023
19
20        /s/  LAURA MILLER ELIAS
21   LAURA MILLER ELIAS, CSR 10019
22   FEDERAL OFFICIAL COURT REPORTER
23
24
25
```